Belair Care Center, Inc. et al., Plaintiffs,

against
Cool Insuring Agency, Inc. et al., Defendants.


1476-14

Barclay Damon, LLP
Attorneys for Plaintiff
(Linda J. Clark, David M. Cost and Joseph A. Murphy, of counsel)
80 State Street
Albany, New York 12207
Maguire Cardona, P.C.
Attorneys for Cool Insuring Agency, Inc., Hickey-Finn & Co., Inc. and Vanner Insurance Agency
(Kathleen A. Barclay, of counsel)
The Sage Mansion
16 Sage Estate
Albany, New York 12204
Keidel, Weldon & Cunningham, LLP
Attorneys for Hirsch Wolf & Co., Inc., Marshall & Sterling, Inc. and The Treiber Group, LLC
(Stephen C. Cunningham and John J. Iacobucci, Jr., of counsel)
925 Westchester Avenue
White Plains, New York 10604
Golden, Rothschild, Spagnola, Lundell, Boylan & Garubo, P.C.
Attorneys for Rampart Agency, Inc.
(Jeffrey M. Kadish, of counsel)
1011 Route 22 West, Suite 300
PO Box 6881
Bridgewater, New Jersey 08807
D'Amato & Lynch, LLP
Attorneys for The Reis Group, Shel-Bern Assoc. and Spain Agency, Inc. 
(Lloyd J. Herman, of counsel)
Two World Financial Center
New York, New York 10281


Richard M. Platkin, J.

Plaintiffs move pursuant to CPLR 305 (c) and 3025 (b) for leave to file and serve an amended summons and complaint. Defendants oppose the motion.
BACKGROUND
The plaintiffs in this action are healthcare providers that conducted business in New York State and were required to provide workers' compensation insurance to their employees. To fulfill this obligation, plaintiffs became members of the Healthcare Industry Trust of New York ("HITNY" or "Trust"). The Trust is a group self-insured trust formed pursuant to Workers' Compensation Law § 50 (3-a) in or about September 1999. 
On December 31, 2007, the New York State Workers' Compensation Board ("WCB") assumed administration of the Trust after finding it to be insolvent. Around this time, the Trust had an estimated deficit of $91 million. Thereafter, the WCB issued letters to members of the Trust, including plaintiffs, advising them that they were jointly and severally liable for this deficit. Each plaintiff was informed of its share of the accumulated deficit and advised that collection actions would be initiated against members if the assessments were not paid.
On July 10, 2009, certain plaintiffs, along with other HITNY members, commenced an action seeking to recover the accumulated deficit from others individuals and entities involved with the Trust, including Compensation Risk Managers, LLC ("CRM"), which served as group administrator to the Trust, certain entities and individuals associated with CRM, and the HITNY trustees ("Trustees") (HITNY v CRM, Index No. 5966-09 ["HITNY Action" or "Member Action"]). Prior to serving the summons and complaint ("Original HITNY Complaint"), plaintiffs filed a First Amended Complaint on November 2, 2009. In December 2009, a forensic audit commissioned by the WCB showed an accumulated deficit of more than $220,000,000. Thereafter, plaintiffs filed a Second Amended Complaint on March 12, 2010 to join new parties, add new causes of action, and plead their new damages.
On December 17, 2012, certain plaintiffs commenced a new action in this Court against three insurance brokers (Sea Crest Health Center v Hirsch Wolf & Co., Index No. 6774-12 ["Sea Crest Action"]). According to the affirmation of plaintiffs' counsel submitted in support of [*2]the instant motion, this separate action was instituted in order to allow the Sea Crest plaintiffs to assert new claims against certain insurance brokers notwithstanding the various stays imposed on the HITNY Action.[FN1]

After the stays were lifted, plaintiffs moved for leave to file and serve a Third Amended Complaint. That motion was granted in a Decision & Order dated October 1, 2013, and the complaint was filed on November 12, 2013. As the Third Amended Complaint included the same claims raised in Sea Crest, the latter action was discontinued via a Stipulation of Discontinuance filed on March 5, 2014. That stipulation gave the Sea Crest plaintiffs the benefit of the action's December 17, 2012 commencement date, while still preserving the right of the defendant-brokers to assert that plaintiffs' claims do not relate back to the July 2009 commencement date of the HITNY Action.
Pursuant to a stipulation dated January 14, 2014, plaintiffs in the HITNY Action assigned all of their claims to the WCB, except for the claims against the insurance brokers. In an order dated March 3, 2014, the Court directed plaintiffs to file and serve a new complaint, under a separate index number, limited to claims against the insurance brokers that were not assigned to the WCB. The order specifically directed that the new complaint shall not contain any new factual allegations or causes of action not encompassed in the Third Amended Complaint. On March 17, 2014, plaintiffs commenced this action through the filing of a complaint ("Complaint") against the insurance brokers.
Plaintiffs then moved for leave to amend the Complaint on May 30, 2014. Disposition of that motion was held in abeyance at the request of the WCB in order to facilitate its efforts to reach a settlement with the remaining CRM-related defendants. A settlement ultimately was reached in early 2016, and the Court permitted plaintiffs to withdraw the motion to amend, which had been stayed for more than one year, without prejudice to the filing of a new motion following the production of certain CRM-related documents by the WCB.
The instant motion to amend the complaint, which was filed on June 3, 2016, seeks to add five new causes of action: breach of contract; negligence; false advertising; aiding and abetting breach of fiduciary duty; and aiding and abetting fraud. The complaint also seeks to join five new defendants: Hirsch Wolf & Company, LLC d/b/a B.R. Wolf & Co. LLC ("Hirsch Wolf LLC"); HUB International Northeast Limited, HUB International Group Northeast Inc., and HUB International Limited; and Rampart Brokerage Corp. ("Rampart Brokerage"). Finally, the proposed amended complaint seeks to add and/or clarify the factual allegations in support of the [*3]existing claims and the proposed new claims.
ANALYSIS
A motion for leave to amend a pleading should be freely granted, provided that there is no prejudice or surprise to the nonmoving party and the amendment is not plainly lacking in merit (CPLR 3025 [b]; Davis v South Nassau Communities Hosp., 26 NY3d 563, 580 [2015]; Smith v Haggerty, 16 AD3d 967, 967-968 [3d Dept 2005]).
A. Evidentiary Support
A party seeking amendment of a pleading is required "to make an[] evidentiary showing that the proposed amendments have merit" (Dinstber v Allstate Ins. Co., 110 AD3d 1410 [3d Dept 2013]; see Bast Hatfield, Inc. v Schalmont Cent. School Dist., 37 AD3d 987, 988 [3d Dept 2007]).[FN2]
 While "[a] summary judgment standard is not to be applied" (Bast Hatfield, 37 AD3d at 988), the proponent is required "to provide some evidence of merit" (Chianis & Anderson Architects, PLLC v Courterback Dev. Co., LLC, 140 AD3d 1286, 1289-1290 [3d Dept 2016] [internal quotation omitted]).
In support of their motion, plaintiffs rely upon an affirmation of counsel, the prior pleadings in the HITNY Action, and client affidavits from 18 of the 34 plaintiffs in this action.
Plaintiffs argue that the affirmation of their counsel and the prior pleadings adequately support the motion, maintaining that "[e]ach of the proposed amendments is simply an amplification of allegations already contained in the prior pleadings in the HITNY coordinated actions" and "are all based upon the same transactions, occurrences and omissions set forth in the prior pleadings" (Reply Memorandum of Law, at 3). 

Plaintiffs also cite authorities in which leave to amend was granted in the absence of client affidavits (see e.g. Dever v DeVito, 84 AD3d 1539, 1541 [3d Dept 2011] ["proposed verified second amended complaint and attorney affidavit submitted by plaintiff supplied the requisite evidentiary support for the [new damages] claim", which "was contained in the original complaint and rests on the same factual circumstances as . . . the original complaint"]; NYAHSA Services, Inc. Self Insurance Trust v People Care, Inc., Index No. 4697-10 [Sup Ct, Albany County, April 28, 2016] [allowing amendment of complaint to pursue recovery of additional arrears that accumulated during pendency of action where defendant's answer to original complaint did not deny allegations of non-payment]). 
Plaintiffs further contend that "the [client] affidavits [that were] provided, taken as a whole" (Reply Memorandum of Law, at 4), suffice to establish the potential merit of the [*4]amendments.
As plaintiffs correctly observe, there are substantial aspects of the proposed amendments that merely reflect amplifications of existing factual allegations and/or legal theories contained in the prior HITNY Action pleadings, and the motion is supported by client affidavits from a majority of the plaintiffs. On the other hand, the prior pleadings in the HITNY Action are themselves unsworn, and certain of the proposed amendments are based upon transactions and occurrences that previously have not been part of the HITNY Action, the Sea Crest Action or this case (see infra). Further, affidavits of merit have not been supplied for 16 plaintiffs, and there are no affidavits from clients of five of the brokers named as defendants. Moreover, certain of the client affidavits that were submitted provide little, if any, evidentiary support for the proposed amendments.[FN3]

Despite considerable misgivings about the inability or unwillingness of plaintiffs' counsel to obtain affidavits or verifications from each of the named plaintiffs, the Court declines defendants' invitation to summarily deny the motion. In the Court's view, there are aspects of the proposed amendments that adequately are supported by the present record, and the interests of judicial economy counsel strongly against attempting to parse out which of the myriad amendments should be permitted by which particular plaintiffs against which particular defendants. Moreover, denial of leave to amend undoubtedly would lead to further motion practice, including applications for reconsideration and renewal (perhaps supported by belatedly gathered client affidavits or verifications), and the prospect of appeals — all of which would give rise to additional delay, uncertainty, expense and duplication of efforts. And even if the denial of leave to amend herein were the final word on the subject, the original seven claims against defendants, including brokers against whom no affidavits of merit were filed, would remain pending before the Court and would be the subject of motion practice and possibly discovery.
Accordingly, under the facts and circumstances of this action, the Court will not deem the absence of affidavits of merit to be a fatal defect. 
B. Timeliness of the Proposed New Claims
Defendants argue that the motion to amend should be denied because the proposed new causes of action (and the new allegations of fact upon which they are based) are barred by the expiration of the statute of limitations and are not saved by the relation-back doctrine. On that basis, defendants argue that it would be futile to grant plaintiffs leave to allege the new claims.
1. Legal Principles
a. Limitations Periods Applicable to the Proposed Claims
The statute of limitations for a breach of contract claim is six years (CPLR 213 [2]), and the "cause of action accrues at the time of the breach" (Ely-Cruikshank Co. v Bank of Montreal, [*5]81 NY2d 399, 402 [1993]; see CPLR 203 [a]).
A claim of negligence is governed by a three-year limitations period that accrues "as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 140-141 [2009] [internal quotation marks omitted]). The statute of limitations ordinarily begins to run on the earliest date upon which the claimed negligence causes a plaintiff to sustain damages (see Brooks v AXA Advisors, LLC, 104 AD3d 1178, 1180 [4th Dept 2013]; see also Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993]).
Similarly, a claim of false advertising under General Business Law ("GBL") § 350 is subject to a three-year statute of limitations that accrues "when plaintiff has been injured by a deceptive act or practice" (see Gaidon v Guardian Life Ins. Co. of Am., 96 NY2d 201, 211-212 [2001]).
A cause of action for aiding and abetting a fraud must be commenced within six years from the time the fraud was committed or within two years from the time the fraud was discovered or could have been discovered through reasonable diligence (Giarratano v Silver, 46 AD3d 1053, 1056 [3d Dept 2007], citing CPLR 213 [8]; see State of NY Workers' Compensation Bd. v Madden, 119 AD3d 1022 [3d Dept 2014]).
Finally, the statute of limitations for a claim for aiding and abetting a breach of fiduciary duty depends on the substantive remedy that the plaintiff seeks. Where, as here, the remedy sought is purely monetary in nature, courts construe the suit as alleging "injuries to property" within the meaning of CPLR 214 (4), which has a three-year limitations period. However, a six-year limitations period is available insofar as the claim is grounded upon essential allegations of actual fraud (see Kaufman v Cohen, 307 AD2d 113, 119 [1st Dept 2003]). Such a claim generally accrues on the earliest date upon which the alleged breach of duty causes a plaintiff to sustain damages (see id. at 121 n 3).
b. Relation Back
Pursuant to CPLR 203 (f), a "claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." "The sine qua non of the relation[] back doctrine is notice, and the requisite notice must be contained in the [pleading to which relation back is sought]" (Lawyers' Fund for Client Protection of The State of New York v JP Morgan Chase Bank, N.A., 80 AD3d 1129, 1130 [3d Dept 2011]; see also US Bank N.A. v Gestetner, 103 AD3d 962 [3d Dept 2013]; August Bohl Contr. Co., Inc. v L.A. Swyer Co., Inc., 74 AD3d 1649 [3d Dept 2010]).
The relation-back doctrine also "allows a claim asserted against a defendant in an amended filing to relate back to claims previously asserted against a codefendant for Statute of Limitations purposes where the two defendants are united in interest'" (Buran v Coupal, 87 NY2d 173, 177 [1995]). Under this doctrine, relation back is available where "(1) both claims [must arise] out of same conduct, transaction or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for [a] . . . mistake by plaintiff as to [*6]the identity of the proper parties, the action would have been brought against him as well" (id. at 178 [citations and quoted sources omitted]; see Mongardi v BJ's Wholesale Club, Inc., 45 AD3d 1149, 1150 [3d Dept 2007]).
2. Application to Particular Defendants/Proposed Defendants
a. Hickey-Finn
Hickey-Finn & Co., Inc. ("Hickey-Finn") first was named as a defendant in the First Amended Complaint dated November 2, 2009. The complaint included Hickey-Finn within the definition of "Broker" (First Amended Complaint ¶¶ 133, 138), and it alleged that each such Broker made material misrepresentations and omissions in soliciting certain plaintiffs to join or remain members of the Trust (id. ¶¶ 244-248).[FN4]
 Subsequent pleadings identified the particular defendant-brokers against whom particular plaintiff-employers were claiming, but none of the prior pleadings alleged that Hickey-Finn had any relationship with plaintiffs or placed any of them into the Trust as an insurance broker (see Second Amended Complaint ¶ 279; Third Amended Complaint ¶ 322; Complaint ¶ 121). Indeed, the prior pleadings did not allege any particular facts regarding the role of Hickey-Finn.
In their proposed amended complaint, plaintiffs do not seek to allege that Hickey-Finn served as an insurance broker to any of the plaintiffs. Rather, the proposed pleading includes new allegations alleging conflicts of interest and taking issue with the level of commissions charged by Hickey-Finn to the Trust. Specifically, the proposed amended complaint alleges that "CRM purchased E & O insurance for HITNY's Trustees through Defendant Hickey-Finn, a firm owned by Daniel G. Hickey, Sr. and Robert Finn, both of whom were owners of CRM and on its Board of Directors" (¶ 166 [g]). It further alleges that "CRM prevented other insurance brokers from providing quotes or issuing a policy for the Trustees' E & O insurance" and, in that connection, cites $263,441 in commissions paid by the Trust to Hickey-Finn in fiscal year 2004-2005, as well as more than $1.6 million paid by CRM to Hickey-Finn from 2002 through 2008 for commissions, rent and other fees for which plaintiffs eventually were assessed (id. ¶ 166 [h]).
The Court concludes that neither the Complaint filed in this action nor the complaints previously filed in the HITNY Action accorded Hickey-Finn notice of the specific transactions or occurrences upon which plaintiffs now seek to premise liability. The prior pleadings merely 
included Hickey-Finn within the group of insurance brokers that allegedly breached duties owed to plaintiffs in connection with joining or remaining members of the Trust. There was nothing in the prior pleadings that apprised Hickey-Finn that it faced the prospect of liability in connection with CRM's purchase of insurance for the Trustees or on account of any alleged conflicts of interest.
As plaintiffs cannot avail themselves of the benefit of relation-back doctrine against Hickey-Finn, it is apparent that the new claims are barred by the expiration of the statute of limitations. The alleged breaches of contract by Hickey-Finn necessarily occurred no later than December 31, 2007, when the WCB assumed administration of the Trust. Further, the negligence and GBL § 350 causes of action accrued no later than July 10, 2009, by which time (1) the WCB had issued deficit assessments to each plaintiff-member, demanded payment, and [*7]threatened to initiate collection litigation if payments were not made, and (2) plaintiffs had commenced their own action against CRM, the Trustees and the Trust's professional advisors to recover the accumulated deficit for which they were being held responsible by the WCB (see e.g. Original HITNY Complaint ¶¶ 127, 335). Similarly, any aiding and abetting of CRM's fraud or breaches of duty necessarily terminated when the WCB assumed administration of the Trust, and any resulting damages were sustained no later than July 10, 2009. Finally, the two-year discovery rule was triggered no later than December 18, 2009, when the WCB's forensic audit was completed and delivered.
Accordingly, given the patent untimeliness of the proposed amendments, it would be futile to allow plaintiffs to assert the new claims against Hickey-Finn.[FN5]

b. Cool
Cool Insuring Agency, Inc. ("Cool") contends that the claims raised by plaintiff Morgan Estates ACF ("Morgan Estates") do not relate back prior to the December 17, 2012 commencement date of the Sea Crest Action. Cool further argues that its involvement with Morgan Estates ended no later than April 1, 2006 and, therefore, the proposed new claims are, in any event, untimely.
Cool first was named as a defendant and identified as a "Broker" in the Second Amended Complaint (¶ 155). This complaint includes specific allegations that the Brokers solicited certain plaintiffs to become members of the Trust and, in so doing, made material misrepresentations and omissions (¶¶ 274-278). However, in particularizing the allegations made by plaintiffs against the various Brokers, the allegations against Cool were limited to the claims made by Eden Park Health Services, Inc. (¶ 279 [i] [pertinent allegations "shall be deemed to have been made by and in favor of each of the following Corporate Plaintiffs against the corresponding Broker"]). It was not until the Third Amended Complaint that Morgan Estates asserted allegations of wrongdoing against Cool (¶ 166 [h], [ee]). As a result, the Second Amended Complaint failed to provide Cool with notice that it was subject to suit for separate and distinct insurance brokerage transactions involving Morgan Estates.[FN6]

Accordingly, the new allegations against Cool are not entitled to the benefit of the March 10, 2010 filing date of the Second Amended Complaint and, instead, are governed by the December 17, 2012 commencement date of the Sea Crest Action. The issue then becomes whether Cool has established the patent untimeliness of plaintiffs' five new claims with respect to such date.
In opposition to the motion, Cool has submitted an affidavit and documentary evidence to substantiate its claim that any relationship with Morgan Estates terminated by April 1, 2006. If [*8]this proof is credited, the six-year limitations period expired on April 1, 2012, the three-year limitations period, triggered upon injury, expired on July 10, 2012, and the two-year discovery period expired on December 18, 2011 — all prior to the commencement of the Sea Crest Action.
While the Court ordinarily would be reticent to consider affidavits or documentary evidence submitted by a defendant in opposition to a motion to amend a complaint, Morgan Estates did not submit an affidavit of merit in support of its motion, and no affidavit from Morgan Estates controverting the assertions made by Cool was submitted in reply. Moreover, the proposed amended complaint does not include any allegations of fact inconsistent with the proof adduced by Cool. As the only proof before the Court affirmatively demonstrates the patent lack of merit associated with the claims Morgan Estates proposes to assert, it would be futile to allow plaintiffs to amend their complaint to allege these new claims against Cool.
c. Vanner
Vanner Insurance Agency ("Vanner") was added as a defendant via the Second Amended Complaint, which asserted claims relating to Gerry Homes, Gerry Homes Management Co., Inc. and Gerry Nursing Home Co., Inc. (¶ 279 [j-l]). Vanner argues that plaintiffs' claims relate back no earlier than the March 10, 2010 filing date of the Second Amended Complaint. The Court agrees. The prior complaints, to which Vanner was not a party, did not provide notice to Vanner of the transactions and occurrences upon which the proposed amendments are based. 
However, Vanner has failed to establish that any of the proposed new claims are entirely time-barred under a March 10, 2010 date of commencement. Under both the six-year and three-year limitations periods (measured from injury), Vanner is subject to suit for events that occurred prior to the WCB takeover, and the Second Amended Complaint was filed within two years of the WCB's forensic report.
d. Hirsch Wolf and Marshall & Sterling
Hirsch Wolf & Company, Inc. ("Hirsch Wolf") first was named as a defendant in the First Amended Complaint filed on November 2, 2009. Marshall & Sterling, Inc. first was named in the Second Amended Complaint filed on March 10, 2010. Both defendants argue that the five new causes of action do not relate back to the filing dates of the prior complaints because the claims "all rely on transactions and occurrences which are not even generally alleged or noticed" in the prior pleadings (Memorandum in Opp, at 10).
With respect to the proposed contract claim, for example, defendants observe that the First and Second Amended Complaints fail to allege the necessary elements of a breach-of-contract claim, including offer and acceptance. Similarly, defendants argue that the prior pleadings did not allege that any false advertising had an impact on consumers at large. And with respect to the aiding and abetting claims, defendants argue that the prior pleadings do not mention any facts regarding a fraudulent scheme between CRM and the insurance brokers aimed at injuring plaintiffs.
The Court does not find these contentions persuasive. The relevant inquiry is not whether the prior pleadings alleged the material elements of each cause of action (cf. CPLR 3013). As codified in CPLR 203 (f), plaintiffs are entitled to the benefit of relation back unless the prior pleading did not accord defendants notice of the relevant transactions or occurrences to be [*9]proven. The prior complaints allege that Hirsch Wolf and Marshall & Sterling solicited certain plaintiffs to become members of the Trust and, in so doing, misrepresented and concealed material facts from their clients. These pleadings further allege that the insurance brokers and CRM agreed to conduct the Trust's affairs through a pattern of racketeering activity and for the purpose of intentionally defrauding plaintiffs (First Amended Complaint ¶¶ 353-356; Second Amended Complaint ¶¶ 416-419). These allegations of transactions in which Hirsch Wolf and Marshall & Sterling solicited healthcare employers to become members of the Trust, served as insurance brokers to certain of the plaintiffs, made false representations in rendering these brokerage services, and engaged with CRM in a criminal scheme to defraud plaintiffs, taken as whole, suffice to put Hirsch Wolf and Marshall & Sterling on notice sufficient to support the new causes of action alleged against them. 
As Hirsch Wolf and Marshall & Sterling failed to establish that the First and Second Amended Complaints did not give them notice of the transactions or occurrences to be proved in the amended pleading, the new claims must be deemed to have been interposed upon the filing of these complaints. And with the benefit of a commencement date no later than March 10, 2010, there has been no showing that the new claims are barred in their entirety by the expiration of the statute of limitations.
e. Hirsch Wolf LLC
Plaintiffs seek leave to join Hirsch Wolf LLC as a defendant. According to the proposed amended complaint, Hirsch Wolf and Hirsch Wolf LLC "are the alter egos of each other and are liable for the debts, judgments and liabilities of each other" (¶ 49).
Plaintiffs' claims against Hirsch Wolf LLC plainly are time-barred unless they relate back to the claims asserted against Hirsch Wolf. In arguing that relation back is unavailable, Hirsch Wolf LLC asserts that the amended complaint fails to allege the second element of the tripartite test: that Hirsch Wolf and Hirsch Wolf LLC were united in interest and, by reason of that relationship, Hirsch Wolf LLC can be charged with notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits (see Mongardi, 45 AD3d at 1150-1151, supra). But defendants cite no authority for the proposition that unity of interest must be pleaded, and neither Hirsch Wolf nor Hirsch Wolf LLC have submitted proof affirmatively establishing lack of unity. Moreover, plaintiffs do allege that the two companies are alter egos of one another, and a finding of alter-ego status would provide the requisite unity of interest.[FN7]
 Accordingly, Hirsch Wolf LLC has failed to demonstrate that the proposed claims against it clearly are time-barred.
f. Treiber
The Treiber Group LLC ("Treiber") first was named as a defendant in the Third Amended Complaint, filed on November 12, 2013. Treiber also was named in the Summons with Notice filed in the Sea Crest Action and, as a result of the Stipulation of Discontinuance entered in that action, three of the five plaintiffs alleging claims against Treiber are entitled to the benefit of a [*10]December 17, 2012 commencement date.[FN8]

With respect to the three plaintiffs benefitting from the Sea Crest date of commencement, the present record falls short of demonstrating the futility of the claims for breach of contract and aiding and abetting fraud, which are governed by a six-year limitations period. The same conclusion follows as to the claim of aiding and abetting a breach of fiduciary duty, to the extent it is premised on actual fraud. However, the negligence and GBL § 350 causes of action accrued no later than July 10, 2009 and, therefore, are untimely. The same conclusions follow with respect to the plaintiffs whose claims are governed by a November 12, 2013 commencement date, although the statutory period for the surviving claims appears to encompass no more than fifty days.
g. Rampart Agency and Rampart Brokerage
Rampart Agency Corp. ("Rampart Agency") was named as a defendant in the First Amended Complaint filed in the HITNY Action and in all subsequent amended pleadings. While Rampart Agency argues that the actions and omissions for which it is being sued occurred between October 2002 and April 2006, it has not offered any specific grounds for concluding that the prior pleadings in the HITNY Action did not accord Rampart Agency notice of the transactions and occurrences that are the subject of the proposed amended complaint. 
Plaintiffs also propose to join Rampart Brokerage as a defendant. According to its counsel, Rampart Brokerage is the entity that actually placed insurance coverage of behalf of certain plaintiffs. For substantially the reasons stated above with respect to Hirsch Wolf LLC, the Court concludes that Rampart Brokerage has failed to affirmatively establish the unavailability of relation back so as render the proposed amendments futile.
h. Reis, Shel-Bern and Spain
The Reis Group ("Reis") and Shel-Bern Associates ("Shel-Burn") first were named as defendants in the First Amended Complaint, and Spain Agency, Inc. ("Spain") was named as a defendant in the Second Amended Complaint. While joining in the statute of limitations arguments made by others, these defendants have not offered any specific basis for concluding that plaintiffs are entitled to a commencement date any later than the filing of the Second Amended Complaint, which renders timely at least a portion of each of the new claims sought to be asserted by plaintiffs.
3. Conclusion
Based on the foregoing, the Court concludes that the present record establishes the futility of the proposed amendments as to Hickey-Finn and Cool. The record further establishes the futility of allowing plaintiffs to allege negligence and GBL § 350 claims against Treiber.
C. Legal Sufficiency of the Proposed New Claims
1. CPLR 3016 (b)
Vanner contends that the "aiding and abetting" claims have not been pled with the [*11]requisite degree of particularity. CPLR 3016 (b) requires a claim for aiding and abetting a fraud to be pleaded with particularity, but this requirement is met when the complaint puts the defendant on notice of the incidents complained of and the "material facts alleged in the complaint, in light of the surrounding circumstances, are sufficient to permit a reasonable inference of the alleged conduct, including the adverse party's knowledge of, or participation in, the fraudulent scheme" (Goel v Ramachandran, 111 AD3d 783, 792-793 [2d Dept 2013]). The same requirement applies to a claim for aiding and abetting a breach of fiduciary duty sounding in actual fraud.
The proposed amended complaint alleges that defendants knowingly induced and participated in frauds committed by CRM and certain related individuals and entities formerly named as defendants in the HITNY Action ("Former CRM Defendants") by acting in concert with them to increase the membership of the Trust despite a mounting deficit (¶ 252). The brokers' assistance allegedly took the form of aggressively marketing Trust membership as a relatively safe and conservative alternative to regulated insurance products through, among other things, the brokers' endorsement of CRM's misleading and inaccurate financial information, all while receiving excessive, hidden commissions (id.). The proposed complaint also cites examples of misrepresentations made by the certain brokers that were directed at plaintiffs and alleges that the brokers acted with scienter in making these false representations, thereby permitting the rational inference that the brokers had actual knowledge of the fraud allegedly perpetrated by the Former CRM Defendants (see AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC, 108 AD3d 444, 446 [1st Dept 2013]).
Under the circumstances, the Court is satisfied that the proposed aiding-and-abetting causes of action are pleaded with sufficient particularity.
2. Sufficiency of GBL § 350 Claim
Defendants contend that plaintiffs have failed to propose a viable claim of false advertising in violation of GBL § 350.
"The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349" (Goshen v Mutual Life Ins. Co. of NY, 98 NY2d 314, n 1 [2002]).[FN9]
 Thus, "a cause of action for false advertising pursuant to General Business Law § 350 is stated so long as plaintiffs allege that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury" (DeAngelis v Timberpeg East, Inc., 51 AD3d 1175, 1177 [3d Dept 2008] [internal quotation marks and citations omitted]).
The Court concludes that the false advertising that plaintiffs propose to allege is not consumer-oriented within the meaning of GBL § 350. Plaintiffs are large healthcare employers with a statutory obligation to maintain insurance for their substantial workforces. Such [*12]enterprises are not "consumers" within the meaning of the statute (see Benetech, Inc. v Omni Fin. Group, Inc., 116 AD3d 1190, 1191 [3d Dept 2014]; Sheth v New York Life Ins. Co., 273 AD2d 72, 73 [1st Dept 2000]), and the proposed amended complaint fails to allege facts of an evidentiary nature demonstrating a broader impact on consumers at large (see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25-26 [1995]; Mandelkow v Child & Family Servs. of Erie County, 49 AD3d 1316, 1318 [4th Dept 2008]; State of NY Workers' Compensation Board v 26-28 Maple Avenue, Inc., 80 AD3d 1135 [3d Dept 2011]). Further, it is apparent from the proposed complaint that many of the interactions between plaintiffs and their insurance brokers were based upon individualized written and oral statements. Under the circumstances, the allegations of the proposed claim boil down to nothing more than "[p]rivate contract dispute[s], unique to the parties," which do "not fall within the ambit of the statute" (Oswego Laborers' Local 214 Pension Fund, 85 NY2d at 25). 
As the instant dispute is, in essence, one over the methods and means used to induce commercial enterprises to purchase workers' compensation insurance for their workforces, and not conduct directed at, or broadly impacting, the consuming public at large (see New York Univ. v Continental Ins. Co., 87 NY2d 308, 320-321 [1995]; 26-28 Maple Avenue, 80 AD3d at 1137; Benetech, 116 AD3d at 1191), the Court concludes that the proposed GBL § 350 claim is patently lacking in merit, and it therefore would be futile to allow the proposed amendment.
3. Alter Ego
Hirsch Wolf LLC argues that the proposed amended complaint fails to plead a basis for alter-ego liability.
"A plaintiff seeking to pierce the corporate veil must demonstrate that a court in equity should intervene because the owners of the corporation exercised complete domination over it in the transaction at issue and, in doing so, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to the plaintiff" (East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 126 [2d Dept 2009] [citations omitted], affd 16 NY3d 775 [2011]). Corporate separateness also may be disregarded "when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego" (Matter of Island Seafood Co. v Golub Corp., 303 AD2d 892, 893-894 [3d Dept 2003]).
The Court concludes that plaintiffs have failed to propose a legally sufficient alter-ego claim against Hirsch Wolf LLC. In asserting that Hirsch Wolf LLC is the alter ego of Hirsch Wolf, the proposed complaint alleges only that the two companies "had common owners, officers and directors and used the same office space, addresses and phone numbers" (¶ 49). But these alleged facts, even if proven to be true, do not provide a legally sufficient basis for disregarding corporate separateness (see Ferro Fabricators, Inc. v 1807-1811 Park Ave. Dev. Corp., 127 AD3d 479, 480 [1st Dept 2015]; Andejo Corp. v South St. Seaport Ltd. Partnership, 40 AD3d 407, 407 [1st Dept 2007]). Settled law holds that alter-ego liability will not attach merely because two corporations perform similar functions, share common officers, directors or managers, or share facilities or infrastructure (see Pebble Cove Homeowners' Assn. v Fidelity NY FSB, 153 AD2d 843, 843 [2d Dept 1989]; see also 14 NY Jur Business Relationships § 41). 
Under the circumstances, the proposed amendment must be denied.
[*13]4. Remaining Arguments and Contentions
Rampart challenges the legal sufficiency of the proposed amended complaint on various grounds. It contends, among other things, that the proposed new claims are refuted by documentary evidence, including the forensic report and documents signed by certain plaintiffs assenting to the imposition of joint and several liability. However, representatives of the three plaintiffs who allege claims against Rampart have submitted affidavits attesting to the potential merit of the proposed claims, and the unauthenticated documentary evidence offered in opposition to the motion, while perhaps calling into question the merits of certain causes of action, fails to establish that the proposed claims are patently lacking in merit such that amendment would be futile. 
D. Prejudice/Delay
Finally, defendants argue that the motion for leave to amend should be denied as untimely and prejudicial. They argue, among other things, that plaintiffs have failed to provide a reasonable excuse for their delay in seeking amendment and that allowing the proposed amendments would prejudice their defense of this action.
"A request to amend is determined in accordance with the general considerations applicable to such motion, including the statute's direction that leave shall be freely given upon such terms as may be just" (Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411 [2014] [internal quotation marks and citations omitted]). "Although delay alone is insufficient to bar amendment, denial of a motion to amend is appropriate when there is prejudice to the opposing party and no showing of a satisfactory excuse for the delay" (Gersten-Hillman Agency v Heyman, 68 AD3d 1284, 1289 [3d Dept 2009] [internal quotation marks and citations omitted]). In this context, a party claiming prejudice must demonstrate that it "has been hindered in the preparation of [its] case or has been prevented from taking some measure in support of [its] position" (Kimso, 24 NY3d at 411 [internal quotation marks and citations omitted]).
Applying these principles, the Court will exercise its broad discretion to allow the proposed amendments, except as limited by the foregoing. Defendants have failed to establish that plaintiffs' delay has hindered them in any meaningful, non-speculative way in defending against the proposed amendments or in taking measures in support of their position. Further, the present record, taken as a whole, provides a satisfactory excuse for at least certain portions of the considerable delay cited by defendants.[FN10]
 Accordingly, while defendants' complaints are not without some force, the Court declines to deny plaintiffs' pre-answer, pre-discovery motion to amend as prejudicial or untimely.
CONCLUSION
Accordingly,[FN11]
 it is
ORDERED that plaintiffs' motion to amend is granted in part and denied in part, in accordance with the foregoing; and it is further
ORDERED that plaintiffs shall file and serve its proposed amended complaint and proposed amended summons, as limited herein, within thirty days from the date of this Decision & Order; and it is further
ORDERED that, following such filing and service, all counsel shall confer regarding a coordinated briefing schedule for any motions to dismiss the amended complaint and either: (a) stipulate to a schedule, which shall be provided to the Court for its approval, (b) or request a scheduling teleconference with the Court.
This constitutes the Decision and Order of the Court. The original Decision and Order is being transmitted to plaintiffs' counsel; all other papers are being transmitted to the Albany County Clerk. The signing of this Decision and Order shall not constitute entry or filing under CPLR Rule 2220. Counsel is not relieved from the applicable provisions of that Rule respecting filing, entry and Notice of Entry.
Dated: Albany, New York
September 23, 2016
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
Notice of Motion, dated June 3, 2016;
Affirmation of Linda J. Clark, Esq., in Support, dated June 3, 2016, with attached
Exhibits A-W;
Memorandum of Law in Support, dated June 3, 2016;
Affirmation of Stephen C. Cunningham, Esq. in Opposition, dated July 25, 2015;
Memorandum of Law in Opposition, dated July 25, 2016;
Affirmation of Lloyd J. Herman, Esq. in Opposition, dated July 25, 2016;
Affidavit of Kathleen A. Barclay, Esq. in Opposition, sworn to July 25, 2016, with
attached Exhibits A-P;
Affidavit of Michael Plunkett, sworn to July 12, 2016, with attached Exhibits A-D;
Memorandum of Law in Opposition, dated July 25, 2016;
Affirmation of Jeffrey M. Kadish, Esq., dated July 14, 2016, with attached Exhibits A-L;
Memorandum of Law in Opposition, dated July 22, 2016;
Reply Affirmation of Linda J. Clark, Esq., dated August 15, 2016, with attached Exhibits A-B;
Reply Memorandum of Law, dated August 15, 2016.



Footnotes

Footnote 1: On March 31, 2010, CRM applied for an order from the New York State Litigation Coordinating Panel ("LCP") coordinating certain pending actions, including the Member Action. The LCP (Freedman, J.) issued an Order to Show Cause on April 16, 2010 staying pre-trial proceedings in all of the cases that were the subject of the coordination application. The LCP ultimately granted the request for coordination on February 23, 2011, and the coordinated cases were transferred to the undersigned as Coordinating Justice. By order dated March 9, 2011, this Court scheduled an initial conference and continued the LCP's stay of proceedings pending entry of a scheduling order. However, on or about April 29, 2011, Majestic Capital Ltd. f/d/b/a CRM Holdings, Ltd., filed for federal bankruptcy protection, resulting in a bankruptcy stay with respect to certain defendants, including CRM. Stays remained in effect until February 14, 2013.

Footnote 2: This is in apparent contrast to the current practice in the Appellate Division, Second Department, which held in 2008 that "[c]ases involving CPLR 3025 (b) that place a burden on the pleader to establish the merit of the proposed amendment erroneously state the applicable standard and are no longer to be followed. No evidentiary showing of merit is required under CPLR 3025 (b)" (Lucido v Mancuso, 49 AD3d 220, 230 [2d Dept 2008]; see also Fairpoint Cos., LLC v Vella, 134 AD3d 645 [1st Dept 2016] [movant need only show that "the proffered amendment is not palpably insufficient or clearly devoid of merit" [internal quotation omitted]; Landers v CSX Transp., Inc., 70 AD3d 1326, 1327 [4th Dept 2010] ["A court should not examine the merits or legal sufficiency of the proposed amendment unless the proposed pleading is clearly and patently insufficient on its face" (internal quotations omitted).]).

Footnote 3: For example, Jay Mostel, the chief financial officer of defendant Sephardic Home for the Aged, Inc., avers only that "Sephardic Home was never warned by Hirsch Wolf about joint and several liability or other financial risks from joining or remaining in the Trust" (¶ 4). Clearly this affidavit does not demonstrate the meritorious nature of the proposed claims that defendants aided and abetted the misconduct of others or that defendants engaged in false advertising in violation of General Business Law § 350.
Footnote 4: Hickey-Finn also was named in the Original Complaint, but plaintiffs amended that pleading prior to service.

Footnote 5: In view of this conclusion, the Court need not consider the Hickey-Finn's challenges to the legal sufficiency of the proposed claims.

Footnote 6: Contrary to the apparent suggestion of their counsel, plaintiffs' claims against the various brokers permissibly are joined together for economy and convenience, but this is not a class action. Giving effect to Paragraph 279 of the Second Amended complaint, it is as if each named plaintiff had filed a separate complaint against a particular insurance broker, with only one such complaint, that of Morgan Estates, alleging any wrongdoing against Cool. 

Footnote 7: For the reasons stated below, plaintiffs have failed to plead a legally sufficient claim for alter-ego liability and, therefore, the motion to amend must be denied against Hirsch Wolf LLC in any event.

Footnote 8: The stipulation provides that the claims of Throggs Neck Care Corp., Park Avenue Extended Care Center Corp. and Nassau Extended Care Center Corp. are entitled to the December 17, 2012 date of commencement. The remaining claim against Treiber, asserted by United Nassau Extended Care Facility Corp. and Wen Extended Facility Management Corp., shall be deemed interposed as of the filing of the Third Amended Complaint.

Footnote 9: The elements of a cause of action under GBL § 349 are "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act" (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000] [citations omitted]). "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers" (Schlessinger v Valspar Corp., 21 NY3d 166 [2013]). 

Footnote 10: The instant motion is merely a continuance of the prior motion to amend filed by plaintiffs on May 30, 2014. That motion was withdrawn and resubmitted at the Court's suggestion based upon the prospect that intervening factual and legal developments may have rendered stale portions of the prior motion papers. Further, plaintiffs cannot be charged with responsibility for the delays engaged by the various litigation stays.

Footnote 11: Certain branches of plaintiffs' motion were not opposed by any defendant, namely the requests to: correct the identification of the broker for plaintiff Berkshire Nursing and Rehabilitation Center; add United Nassau Extended Care Facility Corp. as a plaintiff; to add as defendants the HUB entities (as alleged successors to Hirsch Wolf); and to amend paragraphs 172, 175-176, 223-224 and 227.